SOUTHERN PAC. R. CO. *v.* POOLE and others

SAME *v.* DAVIS and others.

(*Circuit Court, N. D. California.* August 22, 1887.)

1. PUBLIC LANDS—RAILROAD GRANTS—SOUTHERN PACIFIC RAILROAD COMPANY.
   The land grant to the Southern Pacific Railroad Company of California under the act of congress of March 3, 1871, incorporating the Texas Pacific Railroad Company, is valid; and a road having been completed from Tehachapi pass, along the line provided for, to the Colorado river, as required by the act, the title to the lands granted has fully vested in the Southern Pacific Railroad Company of California.

2. SAME.
   The twenty-third section of said act (16 St. 579) grants to the Southern Pacific Railroad Company of California "the same rights, grants, and privileges as were granted to the same company by the act of July 27, 1866, incorporating the Atlantic & Pacific Railroad Company." And those "rights, grants, and privileges" were the same, along its authorized line, as were granted to the Atlantic & Pacific Railroad Company. 14 St. 299, § 18.

3. SAME—AMENDING ARTICLES OF INCORPORATION.
   The original articles of association of the Southern Pacific Railroad Company of California did not specify, as one of the objects of the incorporation, the construction of a line of railroad from Tehachapi pass to the Colorado river, in the south-eastern part of the state; but, at the time of the passage of the act of congress of 1871, incorporating the Texas Pacific Railroad Company, there was in force the act of the legislature of California of March 1, 1870, authorizing any corporation then existing, or thereafter to be formed, to amend its articles of association, by making and filing amended articles in the same office where the originals were filed; also, a statute authorizing railroad corporations to consolidate with each other. And the articles of association of said company were amended immediately after the passage of the Texas Pacific act, so as to embrace the road therein provided for in the objects of the corporation, and the company consolidated with other companies in pursuance of the statute. The road constructed as provided for in the Texas Pacific act was thereafter completed in accordance with the provisions of the act. *Held,* that the proceedings were valid, and the road afterwards built was constructed in pursuance both of the laws of California and of the acts of congress, and that the title to the lands granted vested in the Southern Pacific Railroad Company of California, as it existed after the amendment of its articles of association, and its consolidation with other roads.

4. SAME—EFFECT OF FILING MAP OF GENERAL LOCATION.
   The filing of the map of general location of the line of the road, by the Southern Pacific Railroad Company of California, in pursuance of the act of congress, inured to the benefit of the Southern Pacific Railroad Company of

California, as it existed after its consolidation, and the amendment of its articles of association, as the successor in interest of the corporation, as it existed at the time of the passage of the act of congress, and of the filing of said map, even if the two corporations cannot be considered as, technically, the same corporation.

(*Syllabus by the Court.*)

In Equity.
*Joseph D. Redding*, for complainant.
*J. P. Meux*, (*Edwin Baxter* and *G. Wiley Wells*, of counsel,) for respondents.

Before SAWYER, Circuit Judge.

SAWYER, J. The case of *Railroad Co.* v. *Orton*, 6 Sawy. 157, [*post*, 457,] involved the validity of the land grant to the Southern Pacific Railroad Company, from San Jose to the intersection of the road with the Atlantic & Pacific road at the Needles, on the Colorado river, under the act of congress of July 27, 1866, incorporating the Atlantic & Pacific Railroad Company. The law was elaborately examined and discussed in that case. The decision was rendered in 1879, some eight years ago; and as the supreme court has never been called upon to review the law as then laid down, although vast interests were involved, and the litigation was by no means conducted without acrimony, the conclusions reached seem to have been acquiesced in. Some other cases were soon after tried in this court, in which the law, as adopted in that case, after further discussion by eminent counsel, was adhered to. I shall, therefore, regard that decision as the settled law of the land, so far as it applies to the land grant under the act incorporating the Atlantic & Pacific Railroad Company, and so far as the principles therein adopted are applicable to railroad land grants under other acts of congress of a similar character.

The present case involves the validity of the land grant under the act of congress of March 3, 1871, incorporating the Texas Pacific Railroad Company; by the twenty-third section of which the Southern Pacific Railroad Company of California is authorized to build a railroad from Tehachapi pass, by the way of Los Angeles, to connect with the Texas Pacific Railroad on the Colorado river, at the south-eastern corner of the state. The twenty-third section of this act (16 St. 579, § 23) grants to the company in aid of the work "the same rights, grants, and privileges as were granted to the Southern Pacific Railroad Company of California by the act of July 27, 1866," incorporating the Atlantic & Pacific Railroad Company. And those "rights, grants, and privileges" were the same along its authorized line as were granted to the main road—the Atlantic & Pacific Railroad. 14 St. 299, § 18. Substituting the words "Southern Pacific Railroad Company of California" for the words "Atlantic & Pacific Railroad Company," in section 3 of the act of 1866, incorporating the Atlantic & Pacific Railroad Company, and striking out the words inapplicable, we have what the act of 1871, incorporating the Texas Pacific Railroad Company, granted to the Southern Pacific Rail-

road Company of California, for constructing the line from Tehachapi pass, by way of Los Angeles, to Fort Yuma. It will then read as follows:

"And be it further enacted, that there be, and hereby is, granted to the Southern Pacific Railroad Company of California, *its successors and assigns,* for the purpose of aiding in the construction of said railroad and telegraph line * * * and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores, over the route of said line of railway and its branches, every alternate section of public land, not mineral, designated by odd numbers, to the amount of * * * ten alternate sections of land per mile on each side of said railroad line * * * wherever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is designated by a plat thereof filed in the office of the commissioner of the general land-office." 14 St. 294, § 3.

See *Railroad Co.* v. *Dull,* 10 Sawy. 511, 22 Fed. Rep. 489, and cases cited on this point, and on the character of the grant.

The original articles of incorporation of the Southern Pacific Railroad Company of California, filed before the passage of either the Texas Pacific act of 1871, or the Atlantic & Pacific act of 1866, stated that it was formed—

"For the purpose of constructing, owning and maintaining a railroad from some point on the bay of San Francisco, and to pass through the counties of Santa Clara, Monterey, San Luis Obispo, Tulare, Los Angeles, and San Diego, *to the town of San Diego,* in said state; thence eastward, through the county of San Diego, to the eastern line of the state of California, there to connect with a contemplated railroad from the eastern line of the state of California to the Mississippi river."

As neither the act of 1866 nor of 1871 had then been passed, although one or both were in contemplation, it could not be known at what point on the eastern line of the state a road could connect; hence, the line of a road like the contemplated one, intended to connect with a road to the Mississippi, and its terminus on the eastern line of the state, could not be definitely located, and it was, necessarily, left indefinite. It will be seen that a direct line of road from Tehachapi pass, through Los Angeles, thence on to the Colorado river, could not pass through San Luis Obispo county, to the city of San Diego, although it would pass through the other counties named and through the eastern part of San Diego county.

After thus filing articles of association, the Atlantic & Pacific act was passed in 1866, and the Texas Pacific act on *March 3, 1871,* whereby the point of connection of both roads on the eastern line of the state could be, proximately, located. On March 1, 1870, the legislature of California passed a general act, authorizing any corporation already formed, or thereafter to be formed, to amend its articles of association, by making and filing amended articles in the same office where the originals were filed. St. 1869–70, 107. And the general statutes providing for incorporation of railroad companies authorized any one or more of such corporations to consolidate into one, carrying with them all the assets, rights, etc., to the consolidated corporation. As we have seen, the Texas Pacific act was passed *March 3, 1871.* The Southern Pacific Rail-

road Company of California, in order to secure the grant to it made by this act, promptly, within a month afterwards, filed its map of general location with the commissioner of the general land-office. And as the line of the road, as set out in the original articles of association, would not run from Tehachapi pass through Los Angeles, and thence by direct line to the Colorado river, or from San Jose by direct route to the Needles, the point of intersection with the Atlantic & Pacific Railroad, in order to remove all question as to its authority under the laws of California, as well as the acts of congress, to build roads on the lines specified in the two acts of congress, and to avail themselves without question of these respective grants, on April 15, 1871, within a month after the passage of the Texas Pacific act, in pursuance of the said general act of California of 1870, authorizing any corporation to amend its articles of association, filed, in all respects as prescribed by the act, amended articles of association, and articles of consolidation with sundry other roads, in which the object and purpose of the corporation, as expressed in the amended articles, are as follows:

"Art. 2. The object and purpose of said new corporation shall be to purchase, construct, own, maintain, and operate a continuous line of railroad from the city of San Francisco, in the state of California, through the city and county of San Francisco, the counties of San Mateo, Santa Clara, Monterey, Fresno, Tulare, Kern, San Bernardino, and San Diego, to some point on the Colorado river, in the south-eastern part of the state of California, a distance of seven hundred and twenty miles, as near as may be; also, a line of railroad from a point at or near Tehachapi pass, by way of Los Angeles, to the Texas Pacific Railroad, at or near the Colorado river, a distance of three hundred and twenty-four miles, as near as may be; also, a line of railroad from the town of Gilroy, in the county of Santa Clara, in said state, passing through said county, and the counties of Santa Cruz and Monterey, to a point at or near Salinas city, in said last named county, a distance of forty-five miles, as near as may be; also, such branches to said lines as the board of directors of said new corporation may hereafter consider advantageous to said corporation, and direct to be established." 6 Sawy. 169, *post*, 464.

Thus, under the amended articles, the company, whatever its powers might have been under the old articles, was fully authorized and empowered to build both the lines from San Jose, to connect with the Atlantic & Pacific at the Needles, and the line from Tehachapi pass, through Los Angeles, on a direct line to Fort Yuma, and there to connect with the Texas Pacific. The very purpose of the amendment was to remove all doubt as to its right, under the state law, to construct those lines, and to enable the company to build the road, strictly in accordance with the laws of California, as it is insisted by the defendant that the recent act requires, and it was adopted immediately after the passage of the Texas Pacific act, when it could for the first time be known, proximately, where the point of connection must be. Very soon after this amendment of the articles of association, the Southern Pacific Railroad Company formally passed a resolution accepting the grant, and directed it to be forwarded to the secretary of the interior at Washington.

The road was, subsequently, within the time prescribed by the statute, fully completed, put in operation, and accepted by the president,

as prescribed in the act. It has ever since been in operation, in all respects as required by the law, and the land grant, if valid, has become fully vested under the acts of congress.

The defendant demurs to the second amended bill, stating, with others, substantially, the foregoing facts, and insists, that, upon this state of facts, the grant is invalid. The ground of invalidity asserted, and relied on, is, that at the date of the passage of the act of congress, March 3, 1871, the Southern Pacific Railroad Company was not authorized by its charter to build the line of road from Tehachapi through Los Angeles, to connect with the Texas Pacific road, and as by the twenty-third section of the act, that company was "only authorized, *subject to the laws of California,* to construct a line of railroad from a point at or near Techachapi pass," etc., the grant was, necessarily, inoperative and void. It does not appear to us that there is even plausibility in this point. It may be conceded, for the purposes of the argument, that the company did not, at the moment of the passage of the act, have a legal capacity, by the laws of California, to construct the road on that line. There were laws in force at that moment, however, that enabled the corporation, by its own voluntary act alone, without any further legislation, to qualify itself to construct the road strictly in all particulars "subject to the laws of California." It was authorized by its own act to amend its articles of incorporation, so as to enlarge the scope of its objects to such an extent as to embrace this road, if not before included within its specified purposes, and it, immediately, did so. The road was constructed in all respects in strict conformity to the laws of California, as they then existed. The act of filing a map of the general location was an act performed, not under the laws of California, but under the provisions of the act of congress, by the corporation designated in the act, as fixing the time when the right should attach, as against other parties seeking to acquire an interest in the lands, and we have no doubt that it was effectual for the purpose.

It is also urged, that upon the amendment of the articles of association and the consolidation with other corporations, but under the same name, a new corporation was created; and that the corporation that built the road is, therefore, not the same corporation as that to which the grant was made. Concede this to be so, technically considered, for the purposes of the argument, it does not follow that the grant fails. Even on that theory, the corporation which built the road is the successor in interest of the corporation named in the act of congress. So far as the amendment is concerned, the corporation is really the same, with enlarged powers, or larger scope in its purposes; else it would not be an amendment, but a dissolution and creation of another independent corporation.

It is, certainly, contemplated by the statute that the corporation, with amended articles, shall continue to hold and to administer the property and assets, succeed to all the rights and franchises of the former corporation, and be charged with all its liabilities. So the consolidated corporation was designed to merge all the property, assets, rights, fran-

chises, and liabilities of the former corporations, which are the constituents of the new one.

Besides, section 2 of the Atlantic & Pacific act, imported into the Texas Pacific act, by virtue of section 23 of the latter, and section 18 of the former, giving to the Southern Pacific Railroad Company of California "the same rights, grants, and privileges, and subject to the same limitations, restrictions, and conditions" prescribed in the former act, expressly says that the lands are granted to the company, "*its successors and assigns.*"

If the consolidated company, with amended articles of incorporation, is not, technically, the same corporation referred to in the Texas Pacific act, it is, substantially and practically, so. If not, it is, certainly, its successor, or assign, and is thus within the express provisions of the grant.

The Central Pacific and Western Pacific companies have also consolidated, and all these companies that have built roads under these land grants have been treated both by the United States government, and the state of California, as having acted in pursuance of the laws both of congress, and of the state. The roads constructed by them have been duly accepted by the president, in the mode prescribed by law, as having been properly constructed by the congressional grantees, under the several acts of congress.

The Central Pacific Railroad Company had no authority at all, under its certificate of incorporation, to construct all that part of its road from the east line of the state of California to Ogden,—over 600 miles. *Sinking Fund Cases*, 99 U. S. 728. Yet its road has been completed and accepted, and the lands granted by the act of congress to a large extent patented.

Notwithstanding the fact, that the building of the Central Pacific Railroad from the state line to Ogden, is not mentioned in the articles of incorporation of the company, the supreme court of the United States, in the Sinking Fund and other cases, has, repeatedly, recognized the capacity of the Central Pacific Railroad Company to lawfully construct this part of its road, and receive the aid provided; and has held the corporation to all its responsibilities under the acts of congress, which it could not have, lawfully, done, if all these acts were void, for want of a legal capacity in the company to do the work, accept the bonds and lands granted, and incur the liabilities thereby imposed. If this land grant in question is void upon the grounds stated, are all the grants to the Central Pacific, Western Pacific, and Southern Pacific, and such of the eastern roads receiving grants as have amended their charters and consolidated, also void, for similar reasons?

If the position urged be correct, are the purchasers and present owners of the many millions of acres of land so granted, and sold, by these several companies wholly without title? These grants should not be nullified, and the vast interests that have grown up under them, should not be destroyed, or disturbed, except upon grounds less purely technical, and far more substantial, than those urged to show the invalidity

of the land grant now under consideration. But this is not a question that can be raised by the defendant. Whether the Southern Pacific Railroad Company has transcended its powers, and received a grant of land to which it was not entitled; whether it has abused, misused, or exceeded its corporate powers,—is a question between it and the state. The state has not complained. The United States, and the state, being satisfied, strangers cannot complain. See *Railroad Co.* v. *Orton,* 6 Sawy. 180, (*post,* 470,) where this question is fully discussed, and the numerous authorities sustaining the position cited.

In our judgment, there is no merit in the demurrer, and it must be overruled. It is so ordered, with leave to answer on the usual terms.